IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CYNTHIA HERNANDEZ,

    Plaintiff,

vs.                                      Civil No. 98-1494 JC/WWD

KENNETH S. APFEL,
Commissioner of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

1. This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed June 23, 1999 **[docket # 5]**. The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits. Plaintiff was 53 years old at the time of the administrative decision. She has an eleventh grade education and past relevant work experience as a self-employed maintenance worker doing cleaning, painting and minor repairs. Ms. Hernandez alleges disability based on back problems.

2. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Plaintiff's testimony of subjective complaints and functional limitations was not supported by the evidence as a whole to the disabling degree alleged. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work. The Appeals Council denied Plaintiff's request for review thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now

seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ failed to develop the record concerning Plaintiff's spinal impairment and to consider the impairment in her decision; (2) the ALJ's assessment of Plaintiff's credibility is legally erroneous and not supported by substantial evidence; (3) the ALJ's assessment of Plaintiff's RFC is legally erroneous and not supported by substantial evidence; and (4) the ALJ's conclusive application of the grid is unsupported by substantial evidence and legally erroneous, where a vocational expert should have been called upon to individually assess the vocational effects of Plaintiff's pain and other nonexertional impairments.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that he or she is

not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Ms. Hernandez lives in a trailer she owns with her daughter and her nine year-old granddaughter over whom she has custody. She supports herself on $200.00 a month which her daughter gets for child support and on food stamps and help from a local church she attends. Tr. at 129-30. She complains of continuous pain in her hands, feet, legs and arms which she states had been diagnosed as fibromyalgia. Tr. at 131, 134, 138.

8. Plaintiff's daughter does not work, but sells burritos which Plaintiff has taught her how to make. The daughter gets a ride from a woman who is willing to drive her to metal shops where she sells the burritos during morning breaks. Tr. at 132-33.[1] Ms. Hernandez told the ALJ at the hearing that she cannot lift and does not do the shopping by herself. Tr. at 131.

9. Her day begins by getting her granddaughter ready for school by making sure the child's teeth are brushed and that she has gotten dressed and out to the bus. After that, she "just kind of meanders up and down to the house," depending on whether her arms or legs are stiff. Tr. at 131-32. She cooks dinner "once in a while" if it does not involve a lot of chopping or cutting and has had her kitchen shelves lowered to where they are within easier reach, since it is

---

[1] Plaintiff explained to the ALJ that they did not have a "burrito wagon" which is referred to in some of the medical records. See, e.g., Tr. at 118; see also ¶ 22, above.

painful for her to lift her arms.  Tr. at 136.  As an example, Ms. Hernandez described to the ALJ trying to make two batches of Christmas cookies to send to her parents in California the day before.  She said that it took her 8 hours to make 2 batches, and that she left 2 more batches unmade in the refrigerator because her joints were throbbing and her glasses were "killing" her.  Tr. at 137.

10. Plaintiff does her own grooming, but needs help with fixing her hair.  Tr. at 137.  She hold two Bible studies a week in her home to keep herself going, but can no longer do needlework because of joint stiffness.  Tr. at 139-40.  She does the dusting, washes dishes and clothes, but her daughter puts away the dishes and puts the clothes in the dryer, since both activities involve bending and lifting, which causes her pain.  She can sustain these activities for about 20 minutes before she either starts to drop items or the pain stops her from going on.  Tr. at 140.

11. Ms. Hernandez stated that she cannot sit for more than two hours, that she can stand for 20 to 30 minutes, has difficulty walking even short distances, and can lift 5 pounds.  Tr. at 134-35.  At the time of the hearing, Plaintiff was taking Elavil and Zoloft to help with both sleep and depression.  Tr. at 139.  She continues to see a doctor for refills.

**First Alleged Error**

12. Plaintiff first alleges that the ALJ failed to develop the record concerning Plaintiff's spinal impairment and to consider the impairment in her decision.  The allegation revolves mainly around a set of back x-rays taken in February 1996.

13. Plaintiff has the initial burden of proof to show she is disabled.  Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991).  Nevertheless, DDS purchased the x-rays for purposes of

4

Plaintiff's disability evaluation. The report showed that there were mild degenerative changes, slight L5 and L3 disc space narrowing and possible disc spur encroachment on the spinal canal at C5.

14. Plaintiff's contentions are unfounded. First the Commissioner did not fail to obtain a medical assessment of the x-ray findings. The findings were shown to Dr. Ralph Powell, the state agency physician, who did review them and incorporated them into his functional assessment of Ms. Hernandez. Tr. at 80. The Commissioner is not required to pass the x-ray findings around to every physician who treated Plaintiff, particularly where the record is otherwise adequately developed.

15. Second, contrary to Plaintiff's contentions, the record *was* adequately developed by the ALJ. Plaintiff was sent twice on consults to Dr. Bert Lies, an orthopedic surgeon, in February and October 1996. Plaintiff saw Dr. Lies a second time after he was provided with additional information for a further assessment.

16. Also contrary to Plaintiff's contentions, the ALJ *did* consider this back impairment. The fact that the ALJ did not specifically mention the x-rays in the decision in no way detracts from the completeness of the findings. An ALJ is not required to discuss every piece of evidence. See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, the ALJ clearly examined this evidence and the related report: she considered Plaintiff's back impairment in terms of a listed impairment and also the degree and nature of the back impairment. Tr. at 14. I find that there is no merit to this first allegation.

**Second Alleged Error**

17. Plaintiff next contends that the ALJ's assessment of Plaintiff's credibility is legally

5

erroneous and not supported by substantial evidence. I find that this allegation has merit and warrants remand.

18. In determining that Plaintiff's testimony of subjective complaints and functional limitations was not supported by the evidence and therefore lacked credibility, the ALJ considered the appropriate factors for the inquiry related to subjective complaints: the nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. SSR-88-13; Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987). However, the findings related to noncredibility are erroneous both legally and factually.

19. Fibromyalgia is described as a syndrome of pain in the fibrous tissues, muscles, tendons and ligaments. The principal symptoms are "pain all over, fatigue, disturbed sleep, stiffness, and . . . multiple tender spots . . . ." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996). There are no laboratory tests for the presence or severity of fibromyalgia. Id.

20. Dr. Lies did not observe any "classical findings" usually found in cases of fibromyalgia, Tr. at 110, but Plaintiff's treating physicians did arrive at fibromyalgia as a diagnosis. Tr. at 95, 96, 101, 107. Although Dr. Lies opined that Ms. Hernandez "may not be able to do heavy work or heavy cleaning as she was doing in the past," and declined to give an opinion as to Plaintiff's degree of disability precluding work, Tr. at 110, the ALJ found Plaintiff limited to light work.

21. The ALJ reviewed the objective medical evidence, lab tests and reports. However, because there are no objective indicators to rely on for diagnosing fibromyalgia or for evaluating the pain that accompanies the condition, the other factors usually included in a credibility inquiry

become even more critical. In assessing Plaintiff's complaints of disabling pain, the absence of objective evidence is not sufficient on which to base a finding of noncredibility. See Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (citation omitted) (subjective complaints of pain may not be disregarded solely because no objective evidence exists to support such claims).

22. The ALJ relied largely on Plaintiff's purported daily activities for the noncredibility finding, but a review of the record shows that the ALJ's findings about these activities are based on misconceptions of the evidence and on a construction of the activities to mean more than the evidence will support. For example, the ALJ stated in her decision that Plaintiff "has been working as a burrito maker and vender." Tr. at 18.[2] Plaintiff plainly clarified her role in the burrito business at the hearing. She explained that her daughter does the selling and that her part involved teaching her daughter how to make the burritos, which lasted only a couple of weeks, and which she was not able to do any longer because she could not walk or sit for any period of time. Tr. at 132-33. The ALJ's misconception was based on a September 1996 report by a treating physician, Dr. Caruana, which stated that Plaintiff "now supports herself by running the burrito wagon." Tr. at 118. The ALJ also was under the impression that Plaintiff and her daughter owned some kind of cart or wagon, which Plaintiff explained was simply not true, as the daughter was driven by another woman in a car to the metal shops to deliver the burritos. Id.

23. An undated disability interview application shows Plaintiff reporting that "on some days" she makes burritos to sell. Tr. at 73. In June 1995, Dr. Caruana reported that Plaintiff was "starting to make burrito runs to make some extra money to pay ex-husband for work he did on

---

[2] Elsewhere in the decision, the ALJ states that "on some days, [Plaintiff] makes burritos to sell." Tr. at 14.

7

trailer." Tr. at 98. In context, Plaintiff's burrito-making days occurred on those days when she was feeling well and during temporary periods, or before the evidence shows Plaintiff reporting the symptoms to have worsened. Tr. at 61, 87; cmp., Sisco v. U.S. Dept. of Health & Hum. Serv., 10 F.3d 739, 743 (10th Cir.1993) (court found there to be a misconception of evidence where ALJ selectively acknowledged parts of Plaintiff's testimony while leaving important segments out, e.g., where Plaintiff testified to being able to do these activities very infrequently and only if she's feeling well).

24. There were similar misconceptions regarding other testimony, e.g., that Plaintiff "pots plants, and makes 'dream catchers' and waters an acre of trees. . . ." Plaintiff qualified her ability to do these activities by stating that watering the trees "takes time," Tr. at 73, and that she does them only a "couple [of] times a month" when her "hands and wrists aren't sore." Tr. at 76. The ALJ may not "pick through the record" using only isolated bits of evidence. Limon v. Shalala, 884 F.Supp. 1481, 1486 (D.Colo. 1995). Here, the ALJ's selection of part of Plaintiff's testimony and reports skewed the evidence related to Plaintiff's daily activities. The sporadic nature of these activities were not sufficiently reflected in the ALJ's decision, rendering the credibility finding legally erroneous and lacking in substantial evidence. See Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993) (ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain, nor does the sporadic performance of household tasks or work establish that a person is capable of engaging in substantial gainful activity).

25. The ALJ commented in the decision that Dr. Caruana reported that "he had not seen the claimant for almost a year." Tr. at 17. Although Plaintiff was not seeing Dr. Caruana, she

8

was seeing Dr. Timms, a rheumatologist, during that period of time.  Tr. at 107, 134.  Further, Plaintiff's complaints of pain were taken seriously by the physicians who treated her (Dr. Caruana, Dr. Timms and Dr. Williams), but who were nevertheless unsuccessful in finding medications that would alleviate Plaintiff's symptoms.  See, e.g., Tr. at 101, 107.[3]  See, e.g., Easthouse v. Shalala, 877 F.Supp. 561, 566 (D.Kan. 1995) (Plaintiff's medical caretakers obviously found plaintiff's complaints meritorious because they consistently sought to find a medication which would properly control the seizures without inducing the negative side effects).  Even Dr. Lies, the physician hired by SSA, found that even though he did not find much in the way of physical findings supporting a diagnosis of fibromyalgia, he did not believe that Plaintiff was accentuating her symptoms.  Tr. at 110.

26.  For the above reasons, I find that the evidence supports the existence of a nonexertional impairment -- pain -- which was discounted by the ALJ based on a finding that Plaintiff's testimony was not credible.  See Williams v. Bowen, 844 F.2d 748, 755 (10th Cir. 1988)(ALJ may rely on the grids when evaluating non-exertional impairment if plaintiff's testimony is not entirely credible).  However, since I find that determination to be lacking in substantial evidence and also legally erroneous, reliance on the grids is precluded.  See Huston v. Bowen, 838 F.2d 1125, 1131-32 (10th Cir. 1988); see discussion, below.

27.  Further, because the existence of a nonexertional impairment diminishes a claimant's residual functional capacity, vocational testimony should be produced which would aid the Commissioner in establishing the existence of jobs in the national economy.  See Cruse v. U.S. Dept. of Health & Hum. Serv., 49 F.3d 614, 619 (10th Cir. 1995).  Therefore, this case should be

---

[3] Elavil finally afforded Plaintiff some relief in getting a full night's sleep.  Tr. at 139.

9

remanded to obtain vocational testimony regarding Plaintiff's ability to perform work, taking into account Plaintiff's nonexertional impairments.

**Third Alleged Error**

28. Plaintiff contends that the ALJ's assessment of Plaintiff's RFC is legally erroneous and not supported by supported by substantial evidence. The ALJ found that Plaintiff had the exertional capacity to perform a light range of work. The RFC assessment performed by Dr. Powell opines that Plaintiff can lift 25 pounds frequently, 50 pounds occasionally; sit, stand or walk about 6 hours in an 8-hour workday; and that she is able to push or pull without limitations. Tr. at 80.

29. Plaintiff argues that the ALJ did not make a proper RFC assessment because the decision did not express Plaintiff's capacity on a function-by-function basis, following paragraphs (b)(c)(d) of 20 C.F.R. 404.1545 and 416.945. This argument fails. The regulation requires that the assessment follow this procedure, but it does not need to be done twice, according to SSR-96p:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

30. In this case, the ALJ did not need to make specific findings on a function-by-function basis because Dr. Powell did so when he did the RFC assessment. The ALJ examined the medical evidence and made the administrative assessment in terms of work category. Doing so was

consistent with the regulations.[4]

31. However, even though the RFC was done using the correct legal standard, it was not based on substantial evidence, since the ALJ had essentially discounted Plaintiff's pain impairment and any effect it would have on functional limitations due to the finding of noncredibility. Pain should not be excluded from an RFC assessment.[5] Because this nonexertional impairment was not taken into account, another RFC should be done on remand, including the effects of Plaintiff's pain impairment on her functional limitations.

**Fourth Alleged Error**

32. Last, Plaintiff alleges that the ALJ's conclusive application of the grid is unsupported by substantial evidence and legally erroneous, where a vocational expert should have been called upon to individually assess the vocational effects of Plaintiff's pain and other nonexertional impairments. I have made findings on this issue in my discussion under Plaintiff's alleged second ground for error, and need not address it further. See ¶¶ 26, 27.

33. In sum, I find that (1) the ALJ did not fail to develop the record concerning Plaintiff's spinal impairment and to consider the impairment in her decision; (2) the ALJ's assessment of Plaintiff's credibility is both legally erroneous and not supported by substantial

---

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986).

[5] SSR 96-8 states: "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as *pain*, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities." (emphasis added).

11

evidence; (3) the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence; and (4) the ALJ's conclusive application of the grid is unsupported by substantial evidence and legally erroneous, where a vocational expert should have been called upon to individually assess the vocational effects of Plaintiff's pain and other nonexertional impairments.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 5]** be granted in that this case remanded to the Commissioner in order to obtain vocational testimony and to perform another RFC at step five taking into account Plaintiff's pain impairment. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE